NEW JERSEY MISCELLANEOUS REPORTS. 865

N. J. Dept. Labor—Roney v. Griffith Piano Co.

NEW JERSEY DEPARTMENT OF LABOR.
WORKMEN'S COMPENSATION BUREAU.

## WILLIAM RONEY, PETITIONER, v. GRIFFITH PIANO COMPANY, RESPONDENT.

**Injury to Neck in Moving Piano—Injury Not Regarded Serious at Time—Dispute About Notice—Temporary Disability Indefinitely—No Estimate of Permanent Disability Until Later.**

On order of determination.

For the petitioner, *Charles Becker.*

For the respondent, *Clarence B. Tippett.*

\* \* \* \* \* \* \* \* \*

3. The facts show that on December 29th, 1923, the petitioner left the warehouse of the respondent with the foreman, Charles Penn. and Joseph Hedden and John Brown, who were also acting as piano-movers. They loaded a babygrand piano on their truck and proceeded to the Branford Theatre, where the piano was moved from the truck to the rear of the stage. The petitioner, Charles Penn, and Joseph Hedden and John Brown, testified concerning the tilting of the upper end of the piano upon the edge of the stage. The three men, the petitioner being in the center, raised the lower end and attempted to shove the instrument on the stage, the fourth man being on the stage, when it slipped from the edge of the stage. When this concert piano slipped to the floor, carrying the petitioner with it, the two men, at each end of the piano, let go, and the petitioner, then bearing the full weight alone, was caught between the piano and the steps, leading from the floor to the door underneath the stage. The testimony and the inferences that may be drawn indicate that his neck was thereby injured on the right side. Although the occurrence did not cause any alarm at the time, the peti-

866 NEW JERSEY MISCELLANEOUS REPORTS.

N. J. Dept. Labor—Roney v. Griffith Piano Co.

tioner testified that he told Mr. Peckham, shipping clerk for the respondent, of the accident that evening, when he called at the office for his weekly pay, when he said to Peckham, "A almost came not being here," referring to the accident.

4. Mr. Peckham, the shipping clerk for the respondent, denied that he had received any notice, report or knowledge of the accident or injury to the petitioner prior to April 1st, 1924. Mr. Charles Penn, the foreman, testified that he told Mr. Peckham on the same day of the damage to the piano, which Peckham admitted, but he denied that he was told about the injury to the petitioner. Mr. Penn further testified that two weeks later the petitioner complained at various times that his neck bothered him, when the petitioner began to apply liniments. Mr. Penn also testified that he took him to Dr. Hitchcock's office for treatment on his own volition, as he had to go there on account of his little daughter's injury.

5. Penn testified that Roney stood with his head like that (indicating). "He was in the middle when it got about this distance, going to fall down. Naturally, I let go. I couldn't hold it. He didn't let go. It gave him a jerk. After that he stood with his head like this. He held his head like this. I said, 'Did you get hurt?' He stood for about three or four minutes and then turned around and said, 'I got an awful jar.'"

6. The petitioner continued to work for a week when he felt a soreness on the side of his neck, and in rubbing the spot he felt that the skin had roughened. The injured spot began to swell and in one month began to have pains from shoulder blade to top of head. He then called at the office of Dr. Wolf, on Mulberry street, Newark, about the middle of February, and he diagnosed the case as a gastric condition. He prescribed certain medicines to the petitioner, but he gained no relief.

7. The respondent claims no notice or knowledge within the ninety-day period, and it therefore becomes a question of veracity between the petitioner and Mr. Peckham. When

Mr. Peckham was recalled to the stand on his direct examination he was absolutely sure he was not told about the petitioner's injury, but on re-examination he was not sure whether or not he knew that Roney was injured. The foreman, Charles Penn, testified that the piano slipped and that the petitioner went down with it and complained to him two weeks later of the effects of his injury. If the foreman can receive and make reports of accident to property, he certainly can do the same concerning injuries to respondent's employes.

8. The preponderance of the medical testimony indicates that at the time of the accident the petitioner sustained a rupture of the sternal mastoid muscle, and that he was treated for hemorrhagic fibroma which resulted in carcinomatous degeneration with the present extensive involvment of his neck and face. The accident was the direct cause of the above conditions, for the reason that it caused an injury to the above muscles, developing into a localized tumor which in turn developed into a malignant and ultimately fatal condition.

9. At the present time it is impossible to say how soon a fatal termination will occur. I believe that this man should remain on temporary disability indefinitely, for the reason that he has a condition which does not improve under treatment, and is incurable.

10. No estimate of permanent disability can be made now or later.

\* \* \* \* \* \* \* \* \*

HARRY J. GOAS,
*Deputy Commissioner.*